Lamb *vs.* State.

JOHN C. LAMB *vs.* THE STATE OF MARYLAND.

*Attempt to Produce an Abortion—Evidence—Parol—Practice in the Appellate Court—Act of 1886, ch. 169.*

On a trial for attempting to procure a miscarriage and an abortion upon the prosecuting witness by furnishing her with drugs and medicines for that purpose, and persuading her to take them, evidence tending to prove that subsequently to the particular act charged in the indictment, the traverser sought to induce the witness to submit to an operation to produce the abortion, is admissible.

Evidence that the traverser made a subsequent attempt to accomplish the abortion by different means, is admissible to show with what purpose and intent he made the attempt charged in the indictment, as well as to corroborate the evidence of the first attempt.

The traverser having written a letter to the witness in which he spoke of a proposition he had made to her, without stating what the proposition was, it was competent for the prosecution to prove by parol that the proposition was that she should be operated upon.

In cases of appeal under the Act of 1886, ch. 169, this Court will not hear and decide any question that ought properly to be brought before the Court upon assignment of error, although the counsel for the State and the accused may agree that such question may be heard and determined on such appeal.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of this Court. The Circuit Court (FOWLER, J.) before whom the case was tried

without the intervention of a jury, found that the traverser was not guilty on the first count, but guilty on the second count in the indictment.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, and BRYAN, J.

*Benjamin Kurtz*, for the appellant.

*Charles B. Roberts, Attorney-General*, for the appellee.

STONE, J., delivered the opinion of the Court.

In this case the defendant Lamb, was indicted in the Circuit Court for Baltimore County for attempting to procure a miscarriage and abortion upon a certain Rachel A. Taylor.

There are two counts in the indictment. The first count charges the defendant with knowingly and wilfully furnishing to Rachel A. Taylor, a pregnant woman, certain drugs and medicines for the purpose of producing an abortion.

The second count charges the defendant with advising and soliciting Rachel A. Taylor to take certain drugs and medicines for the purpose of producing an abortion.

A general demurrer was filed by the accused to the indictment, which was overruled, and he then pleaded not guilty, and the case was tried before the Court.

At the trial the defendant reserved two exceptions to the admissibility of evidence offered by the State, and admitted by the Court below, and these exceptions are properly before this Court.

In the first exception after the State had proved by the witness Taylor, that the defendant had furnished her with some pills and drops, and advised her to take them, saying, that they would destroy the child with which she was then pregnant, the State then asked the witness the following question:

" Did Lamb (the accused) ever propose any other means to you, other than the taking of this medicine for the purpose of producing the abortion ?"

To this question the witness replied in substance, that the accused took her, the witness, to the office of a doctor in Baltimore, and told her she must go through an operation to destroy the unborn child, but the witness refused to submit to such operation.

To this question and answer the defendant objected, but the Court overruled the objection and permitted the question to be asked and answered, and the defendant excepted.

The gravamen of the offence charged against the accused was the purpose and intention of the accused to produce an abortion upon the body of Rachel A. Taylor, and he is charged in the indictment with endeavoring to effect that purpose by furnishing her with drugs, and advising her to take them. Any declaration or acts of the defendant tending to show his intention and purpose to produce such abortion are admissible, whether such acts and declarations were prior or subsequent to the particular act charged in the indictment. That he made a subsequent attempt to accomplish the same purpose by a different means, is admissible to show with what purpose and intent he made the attempt charged in the indictment, as well as to corroborate the evidence of the first attempt. In the case of *Rex vs. Ellis*, 6 B. & C., 145, the prisoner, a shopman, was indicted for robbing his employer's money drawer of a particular sum of money on a particular day; at the trial evidence was admitted that the prisoner had robbed the drawer at other times. Upon review the Court, BAYLEY, J., delivering the opinion, said :

" Generally speaking, it is not competent to a prosecutor to prove a man guilty of one felony, by proving him guilty of another unconnected felony; but where several felonies are connected together, and form part of one entire

transaction, then the one is evidence to show the character of the other."

HOLROYD, J., said in the same case:

"Upon an indictment for robbing the prosecutor of a coat, the robbery having been committed by the prisoner's threatening to charge the prosecutor with an unnatural crime, I received evidence of a second ineffectual attempt to obtain a 1£ note from the prosecutor by similar threats, but reserved the point for the Judges, and they were of opinion that the evidence was admissible, to show that the prisoner was guilty of the former transaction."

The proof of a second attempt to accomplish the same purpose, is therefore, we think, clearly admissible to prove the purpose in the former attempt, and the ruling of the Court on the first exception must be affirmed.

In the second exception the State offered in evidence a letter of the prisoner to Rachel A. Taylor, in which he said:

"I made you a fair proposition, which, if you had not spurned, we would have been the same as ever, &c."

The letter does not disclose what the proposition was, and the State asked the witness, "what was meant by the traverser's proposition as mentioned in the letter," and to which the witness answered, "that it was to be operated upon."

We are at a loss to know upon what grounds this question was objected to. Declarations of the accused, as to the crime with which he is charged, if voluntary, are always admissible against him, and this is nothing but a declaration made by the prisoner that she should be operated upon, and is admissible. The letter does not say what the proposition was, and is only an admission that he had made a proposition, and it was entirely competent to show by parol what it was, if it applied to the case. That it did so apply, we have shown in our opinion on the first exception.

The ruling on this exception must therefore be affirmed.

It is shown by the record, as we have previously said, that a demurrer was interposed to the indictment, which was overruled. We find also in the record an agreement made between the counsel for the State and the counsel of the traverser, that the demurrer and other matters upon the record, should be heard and determined by this Court *upon this appeal*, and the demurrer was in fact argued before us.

But since the argument of the case, we have determined, that upon *appeals* from the rulings of the lower Courts upon the admissibility of evidence, we will not again hear and decide matters that can only be properly brought before us upon assignments of error, as formerly by writ of error.

The reasons for our determination are these: All matters properly reviewable in this Court by assignments of error, can only be brought up *after sentence or other final judgment*. This is the law now under the Act of 1886, ch. 169, and was when the Act of 1872, ch. 316, which allowed appeals from the rulings of the lower Courts on the admissibility of evidence, was passed. This Act of 1886 provides, and in this respect it is similar to, if not identical with, the Act of 1872, that sentence *shall be suspended* until the correctness of the ruling in relation to evidence is determined. It makes no change in the law relative to assignments of error as upon writs of error, and authorizes nothing to be heard on such appeal, except questions relative to evidence, and we should violate the spirit and letter of the Act, if we allowed the whole case including demurrers, &c., to be tried under the guise of an appeal, which was only allowed for a special purpose.

Such being our view of the Act of 1886, and its intent and meaning, we cannot permit what, we think, is its ob-

·vious intent and meaning to be changed or· varied· by any,
agreement between counsel.

*Rulings affirmed, and*
*cause remanded.*

