ELWOOD MITCHELL *v.* STATE OF MARYLAND

[Nos. 32, 33, October Term, 1940.]

580

*Decided November 13th, 1940.*

The causes were argued before BOND, C. J., PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*James A. McAllister,* with whom were *J. Gorman Hill* and *Leroy L. Wallace* on the brief, for the appellant.

*Robert E. Clapp, Jr., Assistant Attorney General,* with whom were *William C. Walsh, Attorney General,* and *Calvin Harrington, Jr., State's Attorney for Dorchester County,* on the brief, for the State.

MITCHELL, J., delivered the opinion of the Court.

There are two appeals in the record before us, the first being from a judgment of the Circuit Court for Dorchester County, entered upon a verdict of a jury finding the appellant guilty of selling an alcoholic beverage in said county, in violation of section 2 of article 2B, of the Annotated Code (1939 Ed.) ; and the second being from the action of the trial court in overruling the motion of the appellant to strike out the judgment.

There is but one count in the indictment, and by it the appellant is charged with having on or about the 25th day of March, in the year 1939, unlawfully sold an alcoholic beverage, to wit: one half pint of whiskey, unto Frederick Bibbens for the price of twenty-five cents, without a license as provided by law. No legal license for such sale is obtainable in Dorchester County, and therefore it is not contended that the appellant held a license to sell alcoholic beverages on the date alleged in the indictment.

During the course of the trial twelve exceptions as to rulings upon evidence were reserved by the appellant, and of these the first, second, third, forth, eight, eleventh and twelth were abandoned in this court.

The fifth, sixth, seventh, ninth and tenth were taken to the court's rulings in permitting witnesses for the State to testify as to a purchase of whiskey from the appellant other than that set forth in the indictment.

Briefly these rulings arose as follows: On re-direct examination, the prosecuting witness testified that one

Thomas Ross was with him at the time of the alleged illegal sale, and he was then asked by the state's attorney, "Did you or not see anything take place between him and Ellwood Mitchell?"—Elwood Mitchel being the traverser. Bibbens, over objection, was permitted to testify that he did, and that ruling is the basis for the fifth exception. He was then asked, "What?" And over objection permitted to answer, "Why he bought half pint himself." A motion to strike out the answer to the preceding question was overruled, and these rulings are the grounds upon which the sixth and seventh exceptions are based.

Under examination, the witness Ross testified that he accompanied the prosecuting witness to the place of business of the appellant, and saw the alleged illegal sale consummated. He was then asked, "What, if anything, did you do after that?" And over objection was permitted to answer, "I made a buy. We put it in our pockets and away we went."

Thereupon the trial judge asked, "Buy of what?" The witness over objection answered, "Whiskey," and these two rulings give rise to the ninth and tenth exceptions.

It is urged by the appellant that the admission of the above evidence was prejudicial and constitutes reversible error, upon the well recognized principle that when one charged with crime is put upon trial for one offense, he is to be convicted, if at all, by evidence showing that he is guilty of the particular offense charged; and that, under ordinary circumstances, proof of guilt of one or more other offenses should be excluded. *People v. Sharp*, 107 N. Y. 427, 14 N. E. 319; *Callahan v. State*, 174 Md. 47, 197 A. 589. But we do not understand the above principle to limit the admissibility of evidence tending to prove facts closely related to the crime charged in the indictment; or that the circumstance that the proof of such facts tends to establish an independent offense renders such evidence inadmissible.

As stated in 1 *Wharton's Crim. Evid.*, (11th Ed.), sec. 345: "The general rule of exclusion of evidence of other

crimes does not deprive the state of its right to make out its case. If evidence of another crime tends directly to prove the defendant guilty of the crime for which he is being tried, or if the other crime and the crime charged are so linked together in point of time or circumstances that one cannot be fully shown without proving the other regardless of whether the crime incidentally shown is of the same or a different character from the one on trial, the general rule of exclusion does not apply. * * * Such evidence is not admitted because it is proof of the other crime, but because of its relevancy to the charge on trial.

In the instant case the record shows that the prosecuting witness and his companion Ross were on the premises of the appellant for a period of but twenty minutes. That circumstance indicates that the alleged sales represented closely connected, if not contemporaneous, transactions of similar character; and in our opinion the collateral offense is so nearly connected with the charge on trial as to establish the relevancy of the evidence and its consequent admissibility. *State v. Donaluzzi,* 1920, 94 Vt. 142, 109 A. 57; 1 *Wharton's Crim. Evid.,* (11th Ed.), sec. 352; *Jones on Evidence,* (3rd Ed.), sec. 145; *Lamb v. State,* 66 Md. 285, 7 A. 399; *Curry v. State,* 117 Md. 587, 83 A. 1030.

Subsequent to the trial and conviction of the appellant, a motion to strike out the judgment and sentence was filed, and the action of the court in overruling that motion is presented by the thirteenth exception. The motion was based upon the allegation that five jurors were excused and absent from the original panel of twenty-five petit jurors, and that at the time the lists from which to strike were handed counsel for the purposes of the trial of the appellant, talesmen had not been drawn to replace the absentees. It is therefore submitted that the twenty names appearing upon the lists did not comprise names drawn by the clerk, by ballot, and that the failure to draw them from a full list of twenty-five petit jurors was prejudicial to the appellant and deprived him of a fair and impartial trial. Testimony on the

584

motion was taken and it was shown that twenty-five petit jurors were originally drawn for service at the then current term of the court as prescribed by the statute; that five names were struck prior to the trial of the case, these being jurors who were absent or excused at that time, and it being admitted that there was no form of ballot used in selecting the names furnished counsel, for the obvious reason that under such circumstances a ballot would have been meaningless.

Except for slight modifications prescribed by the local law of Dorchester County (sections 342 and 343 of the local code), which modifications need not be considered in the solution of the question before us; the method of selecting the names of forty-eight persons, constituting the respective grand and petit juries for that county, is prescribed by article 51 of the Code of Pub. Gen. Laws, 1939.

Section 10 of that article first directs the manner in which the foreman and twenty-two other grand jurors shall be chosen from the above list, and specifically provides that the remaining twenty-five names shall constitute the petit jury for the current term of the court. Provision is next made for filling vacancies on the grand jury, due to the absence of jurors or the action of the court in excusing one or more grand jurors for cause, by filling such vacancies from the remaining twenty-five names of those jurors who are present, in the order in which said names have been drawn from the box; and then provides that the court "may thereupon in its descretion fill such vacancy or vacancies thus made in the petit jury by drawing the necessary number of additional names therefor," in the same manner as the original forty-eight names were drawn.

Section 13 of article 51 provides that: "In all civil cases called for trial in any court in which a jury shall be necessary, according to the constitution and laws of this State, twenty persons from the panel of petit jurors shall be drawn by ballot by the clerk under the direction of the court, and the names of the twenty persons shall

be written upon two lists and one of said lists forthwith delivered to the respective parties or their counsel in the cause; and the said parties or their counsel may each strike out four persons from the said lists and the remaining twelve persons shall thereupon be immediately empanelled and sworn as the petit jury in such cause."

By section 14 of the same article it is provided that, in event of the failure of the parties or their counsel to strike from the lists the number of persons mentioned in the preceding section, the court may direct the clerk to strike from the list, to the end that the remaining twelve persons shall be empanelled and sworn. By section 15, the several courts of the state are empowered to direct talesmen to be summoned to serve on juries "where, without such talesmen, there would not be twenty of the original panel, exclusive of the jury charged, from whom a jury can be formed; or may direct such talesmen to be summoned whenever, by challenging or otherwise, a sufficient number of jurors cannot be had to try the case, either civil or criminal"; and section 16 and 17 provide, respectively: (a) that if the parties or their counsel agree, the drawing of a panel of twenty jurors may be dispensed with, and (b) that the provisions of the four preceding sections to which we have referred shall apply to all criminal cases where the right of peremptory challenge is not allowed.

It will thus be seen that the intent and purpose of the law, as clearly expressed by the statute, is to give to the accused and the State, in all criminal cases in which the right of peremptory challenge is not allowed, and in all civil cases, to the parties or their counsel, the right to strike, from a list of twenty-five qualified jurors, at least four names, and that unless the parties or their counsel agree that the right be dispensed with, the case cannot legally proceed.

Many of the provisions of the present general law of this State regulating the selection of both grand and petit juries are of ancient origin, and, in passing, it may be

noted that they have well served the purposes for which they were originally adopted.

In every essential manner, safeguards against the possibility of placing the choice of either jury entirely within the discretion of the court or any other official have been written in the law. One of these precautions is that of separating the grand from the petit jury by lot; and another, in cases in which the right of peremptory challenges does not prevail and in all civil cases, is that of separating the list of twenty names required to be furnished counsel in the trial of the above classes of cases from the "panel of petit jurors," by lot.

Counsel for the appellant urge that the latter selection must be made, by ballot, from the total of twenty-five petit jury names kept in the jury box at all times, and available at each drawing of a jury, in misdemeanor and civil cases. But obviously such contention is not tenable, when the several sections of article 51 to which we have referred are read in conection with each other. For example, section 10 makes it mandatory that vacancies on the grand jury be forthwith drawn from the remaining twenty-five names which, in the absence of grand jury vacancies, would constitute the petit jury; and leaves entirely to the discretion of the court the question of filling vacancies thus made in the original petit jury. Again section 13 does not direct the clerk to draw by ballot the names of twenty persons from a box containing the names of twenty-five petit jurors; what it does direct, in plain language, is that a list of twenty names shall be drawn "from the panel of petit jurors," which can but mean the body of persons comprising the jury who at the time of trial have not been excused from service. This construction is strengthened when the directions contained in section 15 are considered, because by that section the court is empowered to direct talesmen to be summoned where, without such talesmen, "there would not be twenty of the original panel, exclusive of the jury charged, from whom a jury can be formed." It will be

noted that here the limitation is not twenty-five but is twenty names.

To sanction a principle that whenever a petit juror fails to answer to his name, or for cause shown has been excused from service, the court must forthwith supply the petit jury box with sufficient talesmen to maintain at all times a maximum of twenty-five names, would, in our opinion impede, rather than facilitate, the proper functioning of law courts throughout the state, and retard the prompt administration of justice.

The appellant was furnished with a list of twenty qualified petit jurors, from which he exercised his right to strike. We are of the opinion that the law, under the facts before us, was complied with, and are therefore, unwilling to give approval to the contention indicated.

Because of the importance of the question, we have discussed it at length, but, independently of what has been said, it is our conclusion that the appeals in the instant case should be affirmed for an additional reason, as follows:

It appears from the record that, upon the motion to strike out the judgment, testimony was taken in which it developed that, when the list from which to strike was presented, one of counsel for the appellant frankly admitted that he was cognizant of the fact that one of the regular petit jurors for the term had been excused from service on account of deafness, and that he knew that two other members of the regular petit jury panel were absent on the day of trial, and heard that they had been temporarily excused. He did not know the day on which these jurors had been excused, but had that information before the jury was drawn in the case, and made no objection to the list as presented to counsel at the time the right to strike was exercised. He also testified that he had participated in a number of cases during the then pending term of the court, and "had noticed in other cases that the jurors' names were marked out in red pencil several times and that they usually are when they are presented to the attorneys." Without in any manner

intending to cast reflection upon the attorney who testified as above, we refer to his testimony as tending to show that the practice in the Dorchester County court is not at variance with that of other courts throughout the state.

With admitted cognizance therefore, of the absence of at least three of the regular panel of twenty-five jurors, the appellant was accorded the right to strike from a list of twenty of said panel; which right he does not deny he exercised without objection. In our opinion, after verdict and sentence the doctrine of waiver applies. 1 *Bishop's New Crim. Proc.* (2nd Ed.) secs. 117, 118, 119; 1 *Bishop's New Crim. Law,* sec. 997; *Young v. State,* 90 Md. 579, 45 A. 531.

*Judgment in Appeal No. 32 affirmed, with costs to the appellee.*

*Order in Appeal No. 33 affirmed, with costs to the appellee.*